UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA Z.,[1] | ) | |
| | ) | No. 21 CV 3270 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | April 29, 2024 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Pamela Z. seeks disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") asserting she is disabled by degenerative disc disease, left shoulder degenerative joint disease, depression, and anxiety. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Pamela's remand request is granted:

**Procedural History**

Pamela filed an application for DIB in July 2018 and an application for SSI in January 2019, both alleging disability onset on April 4, 2018. (Administrative Record ("A.R.") 10.) She later amended her disability onset date to December 27, 2018. (Id. at 231.) Her applications were denied initially and upon reconsideration at the administrative level. (Id. at 68-95, 100-131.) Pamela then sought and was granted a

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Pamela's first name and last initial in this opinion to protect her privacy to the extent possible.

hearing before an Administrative Law Judge ("ALJ"). (Id. at 139-40.) Pamela appeared with her attorney at an August 2020 hearing, during which Pamela and a vocational expert testified. (Id. at 38-67.) The ALJ issued his decision the following month, ruling that Pamela is not disabled. (Id. at 10-24.) The Appeals Council denied Pamela's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Pamela then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Pamela argues that the ALJ's decision cannot stand because he: (1) engaged in flawed step 3 analysis and did not account for all of her mental functioning deficits when assessing the mental residual functional capacity ("RFC"); (2) relied on flawed inferences to undermine her symptom statements; and (3) improperly evaluated opinion evidence. When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge

2

between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley,* ___Fed.4th___, 2024 WL 150808, *3 (7th Cir. April 8, 2024). Having considered the arguments and record, the court concludes that remand is warranted.

## A.      Mental Functioning

Pamela argues that the ALJ improperly undermined her paragraph B functioning at step three and did not properly account for all her mental deficits when crafting her mental RFC. (R. 15, Pl.'s Mem. at 8-12.) She contends that the ALJ "failed to build any semblance of a logical bridge between his findings and his ultimate conclusion that [Pamela] would be able to sustain the non-exertional requirements of full-time work." (Id. at 8.) In so arguing, Pamela urges that, even if her mental impairments "do not meet or equal listing level severity, [the ALJ's] failure to properly accommodate her functional deficits in the RFC assessment constitutes reversible error." (Id. at 9.)

To establish listings-level severity at step three, a claimant is required to prove she has at least two "marked" restrictions or one "extreme" restriction in the

paragraph B criteria. *See* 20 C.F.R. § 404.1520. An ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation" when reviewing a claimant's mental impairment(s). *Id.* at § 404.1520a(c)(1). And "[a] list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and his conclusion that [the claimant] has no marked limitations." *Pimental v. Astrue*, No. 11 CV 8240, 2013 WL 93173, at *9 (N.D. Ill. Jan. 8, 2013).

An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, in developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling").

Here, the ALJ found that Pamela's depression and anxiety are severe but do not cause marked or extreme limitations. (A.R. 13-15.) The ALJ evaluated the paragraph B criteria and determined that Pamela has moderate limitations in all four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace ("CPP"); and (4) adapting or managing oneself. (Id.); *see also* 20 C.F.R. § 404.1520a(c)(3). As

to the first area, the ALJ accounted for Pamela's moderate limitation by limiting her to "simple, routine tasks, involving no more than simple decision-making" and "work requiring the exercise of only simple judgment." (A.R. 14 (citing id. at 402-08, 771, 935, 957).) In support of this conclusion, the ALJ referenced Pamela's "hobbies," such as beading and volunteering with a veterans' group, and her having a drivers' license as evidence that she has "an ability to understand, remember, and apply how to operate a motor vehicle, navigate to a location, and follow the rules of a road." (Id.)

The ALJ also cited to examinations and treatment records to support his moderate limitation assessment. Pamela's consultative examination states that Pamela is "able to concentrate and maintain attention" and that her "short- and long-term memory is intact," (id. at 407). The "other evaluations" upon which the ALJ relies either do not discuss Pamela's memory, insight, and judgment, (id. at 771), or consist of check marks on medical forms affirming that Pamela has "normal" perception, "good" insight and judgment, (id. at 957), and is oriented to person, place, time and situation, (id. at 935). The court concludes that, while the ALJ did not provide adequate analysis into how Pamela's activities reveal her level of mental functioning and did not address how "maintain[ing]" a driver's license contributes to her capacity to work, he nonetheless provided enough support by way of Pamela's consultative exam and evaluations to meet the deferential substantial evidence standard. *See Deborah M.*, 994 F.3d at 788.

As for the second area—the ability to interact with others—the ALJ relied on evidence that Pamela socializes with her children and has relationships with her

father and boyfriend, with whom she lives, while discrediting her testimony and report that she isolates at home and no longer socializes or sees friends. (A.R. 14 (citing id. at 37-67, 409-414, 771).) The ALJ assigned Pamela a moderate limitation in this area and restricted her from work involving "direct public service," "in person or over the phone" communications, "crowded, hectic environments" and "tandem tasks," but said "she can tolerate brief and superficial interaction with the public which is incidental to her primary job duties." (Id.)

The ALJ's analysis is unclear as to this area. As an initial matter, Pamela having a relationship with her father and boyfriend is not inconsistent with her report that she isolates at home since she lives with both of them, but the ALJ does not address this point. And while the ALJ states that Pamela maintains a relationship with her father, the record demonstrates that this relationship contributes to or exacerbates her mental health symptoms. (Id. at 771 (November 2019 progress note reflecting that living with her father provides Pamela with "little privacy"), 933 (March 2020 progress note indicating that Pamela presented as "frustrated" and uncomfortable about providing her father care without supervision), 485-86 (April 2020 therapist note reflecting that Pamela's "father often exacerbates her conditions" and his "hoarding exacerbates [her] mania").) The ALJ also cites to a November 2019 progress note from Dr. Conrad Duncker as evidence that Pamela routinely socializes with her children while ignoring hearing testimony—which he relies upon elsewhere—that Pamela's relationship with her children is primarily by phone and Facebook. (Id. at 57 (citing id. at 771 (ALJ asking, "so Conrad Dunker is

incorrect in November 2019 . . . when he said that you have a good relationship with your two children and you socialize with them multiple times per week?"—to which Pamela responded, "talking with them on the phone and Facebook, but seeing them, no, they have their own life").) The ALJ has a duty to consider "all relevant evidence" in reviewing a claimant's mental impairments. *See* 20 C.F.R. § 404.1520a(c)(1); *see also Kathleen M. v. Kijakazi*, No. 20 CV 1687, 2023 WL 143222, at *7 (Jan. 10, 2023) ("'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.'") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

For CPP, the ALJ again concluded that Pamela has a moderate limitation. (A.R. 14.) Although the ALJ recognized that Pamela testified she had trouble with focus and attention and appeared "depressed and anxious" at multiple evaluations, (id. (citing id. at 378 (April 2018 examination noting Pamela presented with "anxiety, anger, and depressed mood" and "reports ups and downs in her mood"), 891, 893 (October and November 2019 progress notes describing Pamela as "moderately anxious")), he found that "despite this," Pamela had no issues with attention or concentration during two examinations, (id. (citing id. at 409-14, 771 (May and November 2019 examinations). The ALJ also concluded that Pamela possesses the capacity to concentrate and maintain attention "to the extent she can drive." (Id. (citing id. at 409-14 (medical note stating Pamela drove herself to an appointment).)

Finally, the ALJ reasoned that Pamela can "adhere to a schedule" because she is able to administer to her father nebulizer treatments four times per day. (Id.)

The ALJ's analysis of Pamela's CPP limitations gives the court pause for several reasons. First, the ALJ did not address the fact that Pamela reported that her mood can go "up[] and down," considering that one of her diagnoses is bipolar disorder. *See Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (feeling "fine" at one appointment "does not weaken the rest of [claimant's] testimony" of his symptoms where he reported that some days were worse than others). Second, the ALJ did not build a logical bridge linking the evidence to his conclusion. The ALJ places too much emphasis on Pamela's ability to drive and equating this to her ability to concentrate and maintain attention. *See id.* (performing household chores such as driving "are not inconsistent with being unable to engage in substantial gainful activity"); *Ronald P. v. Kijakazi*, No. 20 CV 339, 2022 WL 832674, at *11 (N.D. Ill. March 21, 2022) ("An ALJ must consider daily living activities with care, because a claimant's ability to struggle through them does not mean that [she] can manage the requirements of a modern workplace.") (internal citation and quotation omitted); *Bainter v. Colvin*, No. 13 CV 9105, 2015 WL 5177754, at *7 (N.D. Ill. Sept. 2, 2015) (ability to travel "does not mean that [claimant] is capable of [full-time] work"). The ALJ provided no analysis as to how Pamela's ability to drive contributes to her ability to work and ignored contrary evidence suggesting that driving causes Pamela to experience mental health symptoms. (A.R. 48 (Pamela testifying that she does not like driving and likening it to a "phobia"), 375 (March 2018 medical note that Pamela reports a

"[f]ear of highway driving"), 771 (November 2019 progress note stating Pamela's "anxieties surrounding driving and socialization worsened").)

Next, the ALJ relies on Pamela taking care of her father, who lives with her, as evidence that Pamela can follow a schedule. (Id. at 14.) However, the progress notes the ALJ relied upon merely state that Pamela administered a nebulizer treatment to her father when he had bronchitis—suggesting that the nebulizer was temporary—and that Pamela did not feel qualified to provide help. (See id. at 931, 933 (March 2020 progress notes recording that Pamela presented as frustrated because her father was supposed to have a home health nurse and that she was uncomfortable providing treatment).) The ALJ did not inquire at the hearing about how Pamela's help providing her father treatment could assist her engage in full-time employment. To be sure, performing household chores, providing childcare, or providing care to an ailing relative does not necessarily discredit a claimant's description of her disability. *See Cullinan v. Berryhill*, 878 F.3d 598, 603-04 (7th Cir. 2017) (ALJ impermissibly inferred that claimant was not limited by impairments because she cared for her cousin in nursing home and for her ill grandmother); *Engstrand*, 788 F.3d at 661 (helping with household tasks insufficient to preclude claimant from establishing disability); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (ALJs should not "equate[] the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation."); *Gentle v. Barnhart*, 430 F.3d 856, 867 (7th Cir. 2005) ("A person can be totally disabled . . . even if, because of

9

an indulgent employer or circumstances of desperation, [she] is in fact working.").
The fact that Pamela helped her father with his nebulizer temporarily does not
establish that she can adhere to a schedule or sustain full-time employment when the
alternative is that her father receives no help at all.

The ALJ also assessed Pamela with a moderate limitation in adapting or
managing oneself–the fourth area–relying on the fact that Pamela attended therapy
and took medication. (A.R. 14-15.) The ALJ also pointed out that there is "no
indication [Pamela] is unable to control her emotions in public or with treatment
providers" and that she has never been hospitalized for psychiatric issues. (Id.)

The ALJ's reliance on Pamela taking medication and attending therapy is
improper for several reasons. First, the ALJ fails to explain how Pamela's medication
and therapy reflect her ability to adapt and manage herself or otherwise participate
in the workforce. *Wendy S. v. Saul*, No. 18 CV 1753, 2019 WL 2867199, at *9 (ALJ's
reliance on therapy attendance improper without explanation of therapy records
themselves or how attendance was inconsistent with claimant's testimony). The ALJ
cites to the entirety of Pamela's therapy notes,[2] (A.R. 14 (citing id. at 771-980)),
which, if anything, refute the ALJ's analysis as they show that she has good and bad
days, consistent with Pamela's report that her symptoms fluctuate. (Id. at 378 (April
2018 examination noting Pamela "reports ups and downs in her mood").) Pamela also

---

[2] The therapy notes span over 200 pages, and the ALJ does not point to any specific
entry or page, "thereby making judicial review more difficult." *Fuchs v. Astrue*, 873
F. Supp. 2d 959, 971 (N.D. Ill. 2012) ("'Judges are not like pigs, hunting for truffles
buried in [the record]'" where ALJ failed to cite to specific treatment note) (quoting
*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1999)).

points to the record showing that she did indeed have trouble controlling her emotions. (R. 15, Pl.'s Mem. at 9, 11-12 (citing A.R. 375-76 (March 2018 medical note describing Pamela as "tangential" and "anxious" and that "[s]he becomes easily irritable with coworkers and 'tells them off'"); 431 (July 2019 progress note describing Pamela as "tangential and difficult to redirect"); 771 (November 2019 progress note where Pamela reported hypomanic periods with days of little sleep and excessive shopping such as going to the grocery store to "load up three full shopping carts worth of items and then would return all of it at the register because of insufficient funds.")).) And, as Pamela points out, this circuit has cautioned against relying on a claimant's lack of psychiatric hospitalizations as evidence against a finding of disability. (See R. 15, Pl.'s Mem. at 9); *see also Voight v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2014) ("[I]nstitutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves.").

Simply put, the ALJ does not provide substantial evidence to support his evaluation of three out of the four paragraph B criteria. The court is mindful that it cannot substitute its judgment for that of the ALJ's or reweigh evidence. *Deborah M.*, 994 F.3d at 788. But here the court cannot conclude that the ALJ's analysis "say[s] enough to enable a review of whether the ALJ considered" the combined effect of Pamela's mental impairments and limitations on her ability to work. *See Lothridge*, 984 F.3d at 1233. For this reason, remand is warranted.

11

**B.       Symptom Assessment**

Pamela argues that the ALJ improperly assessed her symptoms and "cherry picked" pieces of evidence to support a conclusion of non-disability and to suggest that she was being untruthful.  (R. 15, Pl.'s Mem. at 12-15.)  The court agrees that the ALJ incorrectly slighted Pamela's physical symptom statements and ignored relevant mental symptom evidence.   An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014).  The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).  The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record.  *See Murphy*, 759 F.3d at 815.

When assessing Pamela's impairments, the ALJ deemed her able to meet the demands of "light exertion."  (A.R. 16.)  The ALJ ultimately found that Pamela's "evaluations, including physical therapy and primary care notes, are not consistent with [her] allegations regarding chronic pain" because "she did not describe constant, debilitating pain" to her treaters as she alleged during her hearing testimony.  (A.R. 16.)  Even though the ALJ readily acknowledged that Pamela reported chronic pain in both her testimony and during her medical appointments, (see id. at 15-17

12

(citing id. at 399 (October 2018 doctor visit), 712 (July 2019), 706 (November 2019), 699 (July 2020)), and left shoulder pain, (id. (citing id. at 392 (December 2018), 402-08 (May 2019), 699 (July 2019), 700 (November 2019), 709 (July 2020)), the ALJ nonetheless concluded in his decision that Pamela failed to adequately allege "constant, debilitating pain" without explanation, (id. at 17).

The ALJ also relies heavily on Pamela "contradict[ing]" her statements to providers about rendering home health care to her father, going to a concert in November 2019, and occasionally volunteering outside the home. (Id. at 17-18 (citing 931, 939, 896, 452, 989).) As discussed above, the ALJ failed to confront evidence that did not support his adverse symptom assessment. Because the ALJ failed to "adequately explain" his symptom assessment, substantial evidence does not support it. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). On remand, the ALJ should revisit his analysis of Pamela's activities and consider the full record. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cautioning against over-emphasizing infrequent activities that do not reflect full-time work).

C.   **Opinion Evidence**

Pamela next challenges the ALJ's treatment of opinion evidence, arguing that he did not "articulate any cogent reasons" for rejecting opinions from treating physicians Dr. Conrad Duncker and Dr. Michael Dunleavy and from Pamela's therapist, Marjorie K. Marshall. (R. 15, Pl.'s Mem. at 15-16.) The government responds that the ALJ provided sufficient reasoning to discount each opinion. (R. 17, Govt's Mem. at 8-11.)

13

The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

Here, the court finds no error in the ALJ's evaluation of Marshall's opinions. The ALJ explained that Marshall is not considered an acceptable medical source and so her opinion has no persuasive value. (A.R. 21); *see also* 20 C.F.R. § 404.1502. The ALJ further noted that Marshall's opinion is not consistent with the record. (Id.) An ALJ need only "minimally articulate its reason for discounting" a non-acceptable medical source—a standard the ALJ satisfied. *Grotts v. Kijakazi*, 27 F.4th 1273 (7th Cir. 2022).

14

The ALJ similarly deemed Dr. Dunleavy's RFC assessment not persuasive because it was not consistent with the objective evidence and was based partially on Pamela's subjective reports, and because Dr. Dunleavy is a primary care physician, not a pain or orthopedic specialist. (A.R. 22.) An ALJ is not required to rely on a medical opinion that is "not supported by treatment notes or the record as a whole" or "if it appears to be based on the patient's subjective allegations." *Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 746 (N.D. Ill. 2019); *see also Gibson v. Massanari*, 18 Fed. Appx. 420, 425 (7th Cir. 2001) (internal inconsistencies or inconsistencies with other evidence are good cause for rejecting medical evidence). It was therefore not an error to discount Dr. Dunleavy's RFC assessment.

As to Dr. Duncker's mental RFC assessment–that Pamela is unable to obtain and retain full-time work, would likely be absent from work more than six days per month, would work at around 40% efficiency, and would be "off task" more than 30% of the time, (A.R. 471-78)–the ALJ found it to be not persuasive because it is not consistent with objective record evidence and because Dr. Duncker had a short treatment history with Pamela, only seeing her three times over a span of five months. (Id. at 21.) While inconsistency may be a reason to discount a medical opinion, the court notes that the ALJ did not ask Pamela why she had only seen Dr. Dunker three times. According to the record, Pamela's past provider died, requiring her to find a new provider and this may explain her short tenure with Dr. Duncker. (See id. 771.) This reasoning should be considered upon remand when assessing the opinion evidence. *See Jones v. Colvin*, No. 12 CV 6151, 2015 WL

15

7568366, at *6 (N.D. Ill. Nov. 25, 2015) ("Before relying on the sporadic nature of [claimant's] treatment, however, the ALJ had an obligation to explore [claimant's] reasons for seeking treatment irregularly, which he failed to do; indeed, there is no questioning on this point in the hearing transcript."). As noted above, ALJs "must rest [their] denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023) (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)). This is not to say that the ALJ must accept Dr. Duncker's RFC assessment—only that he must properly account for the record as a whole upon remand.

Pamela lastly takes issue with the ALJ's analysis of an opinion by consultative examiner Dr. Margaret T. Grano and those of "various State agency consultants." (R. 15, Pl.'s Mem. at 15.) She argues that the ALJ rejected Dr. Grano's opinion that she had no limitation related to "sit[ting], stand[ing], walk[ing], lift[ing], carry[ing], and handl[ing] objects," yet still incorporated her opinion when forming Pamela's RFC. (Id. (citing A.R. 21 (ALJ finding Dr. Grano's assessment "not persuasive")).) This argument is without merit. The RFC did not incorporate Dr. Grano's opinion and indeed includes restrictions greater than the restrictions Dr. Grano offers. (A.R. 15-22.) Pamela also contends that "it is unclear" why the ALJ would credit state agency opinions over those of treating physicians. (R. 15, Pl.'s Mem. at 15-16.) But, as the government correctly points out, (R. 17, Govt's Mem. at 10), the ALJs are not required to give a treating physician's opinion more weight merely based on her status. *Compare* 20 C.F.R. § 404.1520c, *with* § 404.1527.

16

## Conclusion

For the foregoing reasons, Pamela's remand request is granted, and the matter

is remanded for further proceedings at the administrative level.

       **ENTER:**

       _____

       **Young B. Kim**
       **United States Magistrate**